IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| Plaintiff, | : | |
| | : | No. 13-83 |
| v. | : | |
| | : | |
| DAVID THOMAS MATUSIEWICZ et al., | : | |
| Defendants. | : | |

MCHUGH, J.  MARCH 26, 2015

## MEMORANDUM OPINION

### I. Introduction

Amy Gonzalez stands indicted for cyberstalking and conspiracy in connection with the murder of her sister-in-law Christine Belford. Because the federal statute which criminalizes cyberstalking involves instrumentalities of communication, by its very nature it invites questions as to whether it impermissibly punishes protected speech.

Defendant Gonzalez has moved to dismiss the indictment,[1] arguing that "as applied to Amy Gonzalez, the cyberstalking statute (Title 18 U.S.C. §2261(A)) violates the Free Speech Clause of the First Amendment because it is overbroad." Motion to Dismiss the Indictment as to Amy Gonzalez 1. The Motion further contends that the statute "is unconstitutionally vague and violates the defendant's due process rights under the Fifth Amendment in that the statute does not give notice as to what specific conduct is unlawful." *Id.* For the reasons that follow, the Motion will be denied.

---

[1] Co-defendants Lenore Matusiewicz, Gonzalez's mother, and David Thomas Matusiewicz, her brother, have joined in the Motion.

1

## II. Summary of the Indictment

The Government's Indictment against Amy Gonzalez and two co-conspirators, David Thomas Matusiewicz and Lenore Matusiewicz, alleges that they engaged in a prolonged campaign to surveil and harass David Thomas Matusiewicz's ex-wife, Christine Belford. According to the Indictment, David and Christine had divorced in 2006, and a court awarded the parents joint custody of their three children. In 2007, David Matusiewicz and his mother Lenore kidnapped the children and fled to Nicaragua. Authorities returned the children to Christine Belford, and in 2009, David Matusiewicz pled guilty to parental kidnapping and bank fraud. In 2010, the Delaware Family Court terminated David Matusiewicz's parental rights. The Indictment alleges that "[a]fter the commencement of federal criminal proceedings against him," David Matusiewicz began making accusations that Christine Belford sexually abused their children. Indictment ¶ 10. In terminating his parental rights, the Family Court did not find David Matusiewicz's accusations of abuse to be credible.

The Indictment alleges that from 2009 to 2013, David Matusiewicz, Lenore Matusiewicz, and Amy Gonzalez conducted their campaign to surveil and harass Christine Belford. It accuses the Defendants of acts that include posting accusations against Christine Belford online, sending accusations against Belford to the school that one of the children attended and Belford's church, and soliciting their friends' assistance in visiting Belford's home to monitor Belford. In 2013, David Matusiewicz, his father, Thomas, and Lenore Matusiewicz travelled to Delaware for a family court hearing. At the New Castle County Courthouse, Thomas Matusiewicz shot and killed Christine Belford and her companion on February 11, 2013 and took his own life.

The Indictment does not charge any of the Defendants with the murder of Christine Belford or with conspiracy to commit that murder. Rather, the Indictment charges the

2

Defendants with offenses related to their alleged surveillance and harassment. Specifically, the Indictment charges Defendants with violations of the federal interstate stalking statute, 18 U.S.C. §§ 2261A(1), 2261(b) & 2, the federal cyberstalking statute, 18 U.S.C. §§ 2261A(2), 2261(b) & 2, and conspiracy to violate those statutes—offenses that in this case could carry a penalty of life in prison.

### III.     Federal Cyberstalking Statute: 18 U.S.C. § 2261A(2)

Congress passed the original version of the statute at issue in this case in 1996. National Defense Authorization Act for Fiscal Year 1997 § 1069, Pub. L. 104-201, 110 Stat. 2422 (Sept. 23, 1996). The original version prohibited physical stalking that placed a victim in reasonable fear of physical injury. *Id.* It has since been amended to include a prohibition of "cyberstalking," and the relevant text now reads:

> Whoever—
>
> **(2)** with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that--
> **(A)** places that person in reasonable fear of the death of or serious bodily injury to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); or
> **(B)** causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A),
>
> shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A.

### IV.     Defendant's First Amendment Challenge to the Cyberstalking Statute

A challenge to a statute asserting that it violates the First Amendment as "overbroad" is materially different from a challenge that a statute is unconstitutional "as applied." Defendant

3

Gonzalez has advanced a hybrid argument, and because these are distinct challenges with different substantive legal rules, I will consider both.

*A. Is the Cyberstalking Statute Unconstitutionally Overbroad?*

The overbreadth doctrine "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). Striking down a statute that also has legitimate applications because of its potential to punish or chill protected expression is a drastic remedy. The Supreme Court has therefore instructed that courts should employ this remedy "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). A statute should be invalidated as unconstitutionally overbroad only if "a substantial number of its applications are unconstitutional judged in relation to the statute's plainly legitimate sweep", *United States v. Stevens*, 559 U.S. 460, 472 (2010), and "if no reasonable limiting construction is available that would render the policy constitutional." *Sypniewski v. Warren Hills Regional Bd. Of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002). The burden to establish the overbreadth of a statute rests on the party challenging it. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

Defendant contends that Section 2261A is unconstitutional because it criminalizes speech based on the effects that speech has on others, and punishes expression protected by the First Amendment. As proof of the overbreadth of Section 2261A, Gonzalez asserts that the various statements she is charged with making were protected expression. Specifically, Defendant cites statements from the Indictment alleging that she engaged in various communications on the Internet and other media accusing Christine Belford of sexually abusing her children. Memorandum in Support of Motion to Dismiss 13. Clearly, she argues, an aunt has an interest in

4

the well-being of her nieces, and she describes her statements as "expressions of the defendant's sincere belief ... regarding defendant's opinion of Christine Belford." *Id.*

These limited examples of potentially protected speech do not suffice. For an overbreadth challenge to succeed, the law in question must frequently intrude into areas of protective speech. Four circuit courts have already rejected such a challenge. In *United States v. Sayer*, 748 F.3d 425, 434–36 (1st Cir. 2014), like Ms. Gonzalez here, the defendant argued that the cyberstalking statute "encompasses speech that causes only substantial emotional distress," and therefore "it proscribes protected expression that is merely annoying or insulting." The First Circuit disagreed, finding that the statute has many legitimate applications. *Id.* at 435. It noted that only one other court, the District of Maryland in *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), found circumstances where the statute was unconstitutionally applied to protected expression. In the absence of a pattern of unconstitutional applications of the statute, the court concluded that it could not find the statute was unconstitutionally overbroad. *See also United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012) ("Because a substantial number of the statute's applications will not be unconstitutional, we decline to use the strong medicine of overbreadth to invalidate the entire [statute]") (internal citations omitted) (alteration in citation); *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004) ("Most, if not all, of these laws' legal applications are to conduct that is not protected by the First Amendment. Thus, Bowker has failed to demonstrate how 18 U.S.C. § 2261A is substantially overbroad."), *rev'd on other grounds*, 125 S.Ct. 1420 (2005); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (rejecting overbreadth and vagueness challenges to § 2261A).

Ms. Gonzalez does not put forward persuasive arguments for reaching a conclusion at odds with the decisions of so many other courts. Defendant offers only her own purportedly

5

protected speech as evidence that the statute is overbroad. This does not suffice to meet the heavy burden of showing that the statute as a whole is unconstitutionally overbroad in relation to its legitimate applications. If the Indictment is in fact based on expression protected by the First Amendment, an "as-applied" challenge will suffice to protect Defendant's right to free speech.

## B. Is the Cyberstalking Statute Unconstitutional as Applied in this Case?

I next consider a more difficult question—whether the Government is applying Section 2261A against Defendant unconstitutionally. Gonzalez argues that the Government is employing the statute to punish her for the content of speech. The Government counters that the speech attributed to Defendant in the indictment is not protected expression at all.

First I must decide whether the speech alleged in the indictment is protected expression or, rather, as the Government argues, speech that falls into one or more categories of unprotected speech. Some narrowly defined categories of speech are traditionally excluded from the First Amendment's protection. The Supreme Court recently enumerated the categories of traditionally unprotected speech in *United States v. Stevens*: "Since its enactment, the First Amendment has permitted restrictions on a few historic categories of speech—including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct—that 'have never been thought to raise any Constitutional problem.' " 559 U.S. 460, 460 (2010) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

Here, the Government argues that Defendant's speech falls into one or both of two exceptions: the exception for defamation, and the exception for speech integral to criminal conduct. The exception for defamation is relatively straightforward. When speech relates to private individuals, the government may "enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

6

345–46 (1974). In other words, the First Amendment does not prohibit the government from punishing individuals for communicating falsehoods that damage a private individual's reputation. *See Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495, 502 (3d Cir. 1978) (discussing Pennsylvania's state law definition of defamation and its relationship to constitutional protection for defamatory speech).

The exception for speech integral to the commission of a criminal offense is somewhat more difficult to interpret, at least under the facts of this case. The exception is often traced to the Supreme Court's decision of *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). *See Stevens*, 559 U.S. at 468; *United States v. Bell*, 414 F.3d 474, 478 (3d Cir. 2005). In *Giboney*, the Court upheld an injunction barring a union from picketing a nonunion company. *Giboney*, 336 U.S. at 498. The Court reasoned that although picketing involved speech, "the sole immediate object" of the picketing "was to compel Empire to agree to stop selling ice to nonunion peddlers," and if Empire had acceded to the picketer's demands, Empire would have violated state trade restraint laws. *Id.* Thus the speech involved in picketing was, for practical purposes, the means to cause another party to commit an offense, and therefore not protected expression. The Court explained its conclusion with a phrase that has been repeated many times since: "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as *an integral part of conduct in violation of a valid criminal statute.*" *Id.* (emphasis added). *Giboney*'s holding, now a recognized exception to the First Amendment's protection for speech, has been applied to explain why there is no First Amendment protection for "offers to engage in illegal transactions," "offers to provide or requests to obtain unlawful material," and speech in furtherance of a conspiracy. *United States v.*

7

*Williams*, 553 U.S. 285, 297 (2008) (holding that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment").

But the *Giboney* exception has also been subject to criticism. The Third Circuit recently noted that *Giboney*'s famous language, "which is now over 60 years old, has been the subject of much confusion." *King v. Governor of the State of New Jersey*, 767 F.3d 216, 225 (3d Cir. 2014); see also, Eugene Volokh, *Speech as Conduct: Generally Applicable Laws, Illegal Courses of Conduct, "Situation-Altering Utterances," and the Uncharted Zones*, 90 CORNELL L.REV. 1277, 1314–22 (2005). In *King*, the Third Circuit rejected a challenge to New Jersey's statute banning therapists from engaging in counseling designed to change sexual orientation. 767 F.3d at 225. Although it upheld the statute, the court concluded that the *Giboney* exception did not apply, and that "verbal or written communications, even those that function as vehicles for delivering professional services, are 'speech' for purposes of the First Amendment." *Id.* (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–28 (2014).

Because of cautions such as this one, it is important that I avoid interpreting *Giboney*'s exception too broadly. Under the broadest interpretation, if the government criminalized any type of speech, then anyone engaging in that speech could be punished because the speech would automatically be integral to committing the offense. That interpretation would clearly be inconsistent with the First Amendment and cases such as *King*. To understand how the *Giboney* exception applies to a prosecution under 18 U.S.C. § 2261A, it is helpful to examine how other courts have applied the doctrine.

The Third Circuit has not had the opportunity to rule on the constitutionality of the federal cyberstalking statute.[2] Several other courts have confronted similar as-applied challenges

---

[2] The Third Circuit upheld a telephone harassment statute in *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978). The court held that it is within "the power of the Congress to impose criminal sanctions on the placement of

8

to the cyberstalking statute, and citing *Giboney*, all but one of them held that the speech involved was not protected expression.

*United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012) involved a spurned partner's outrageous response to the end of his relationship, colloquially known as "revenge porn." While still together, Petrovic had recorded video and images of his partner in the nude or performing various sex acts. *Id.* at 852. When his partner told Petrovic that she wanted to end their relationship, he threatened to share sexually explicit images and text messages with his partner's family. He proceeded to do that and more, including creating a publicly accessible website with sexually explicit images of his ex-partner, text messages between the pair, and even information about his ex-partner's children. *Id.* The defendant then offered to shut down the site in exchange for money and other property, leading to his prosecution for interstate stalking and interstate extortionate threats. He claimed that prosecution for this conduct violated his rights under the First Amendment. Relying on *Giboney*, the Eighth Circuit ruled that Petrovic's speech was not protected "[b]ecause Petrovic's harassing and distressing communications were integral to his criminal conduct of extortion." *Id.* at 855.[3]

In *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014), seeking to harass a former partner, the defendant posted an online ad on Craigslist, created fake Facebook and MySpace accounts, and posted explicit photographs of her on pornography websites. In these postings, he

---

interstate telephone calls to harass, abuse or annoy. ... [I]n enacting [the statute] the Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives." *Id.* In contrast, in a case addressing an ineffective assistance of counsel claim, the Court of Appeals suggested that a statute which "criminalizes the actions of anyone who 'with intent to harass or alarm another person ... communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communications, in a manner likely to harass or alarm' " might be unconstitutionally overbroad. *Government of the Virgin Islands v. Vanterpool*, 767 F.3d 157, 162 (3d Cir. 2014).

[3] Alternatively, the court proposed that the defendant's speech could be regulated under an Eighth Circuit decision, *Coplin v. Fairfield Pub. Access Television Comm.*, 111 F.3d 1395, 1404 (8th Cir. 1997), which permits government regulations of speech where the regulation is viewpoint neutral and the speech is highly private and offensive.

impersonated her and invited men to her house for sexual encounters, leading a number of men to appear at her door. *Id.* at 429–30. The posts and visits continued even after Doe changed her name and moved. *Id.* The defendant was charged with cyberstalking under 18 U.S.C. § 2261A(2)(A) and identity theft under 18 U.S.C. § 1028(a)(7). *Id.* The First Circuit relied on *Giboney* to reject the defendant's as-applied First Amendment challenge: "To the extent his course of conduct targeting Jane Doe involved speech at all, his speech is not protected. Here, as in *Giboney*, it served only to implement Sayer's criminal purpose." *Id.* at 433–34. In effect, the court concluded that whatever speech was involved could not possibly have any valid purpose.

*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) involved similar factual circumstances. The defendant, Osinger, repeatedly contacted his ex-partner asking her to restore their relationship. *Id.* at 941–43. After being refused, Osinger created a fake Facebook page in his ex-partner's name which included sexually explicit photographs of her. Osinger also sent explicit pictures of his ex-partner to her current and former co-workers. A jury convicted Osinger of cyberstalking. Like the First Circuit, the Ninth Circuit rejected an as-applied First Amendment challenge to the prosecution, also concluding that the defendant's speech was not protected expression:

> Osinger designed a false Facebook page and sent emails to [the victim's] co-workers containing nude photographs of [the victim.] Any expressive aspects of Osinger's speech were not protected under the First Amendment because they were 'integral to criminal conduct' in intentionally harassing, intimidating or causing substantial emotional distress to [the victim.]"

*Id.* at 947.[4]

---

[4] The court additionally found the defendant's speech was unprotected because "it involved sexually explicit publications concerning a private individual." *Id.* at 948. The court cited the Eighth Circuit's decision in *Petrovic* for this position, but offered no other support.

10

Finally, in *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004)[5], *rev'd on other grounds* 543 U.S. 1182 (2005), the Sixth Circuit also rejected a First Amendment challenge to a cyberstalking charge, where the defendant had direct communication with the victim.

The sole case to dismiss a cyberstalking indictment on First Amendment grounds was *United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011). The defendant, who had joined the leader's religious community and then been cast out, was charged for a harassing campaign of Twitter messages directed at a religious leader. He created a number of Twitter profiles, and used those profiles and multiple blogs to direct thousands of derogatory messages to the religious leader. The district court held that the defendant's speech was protected expression, because despite their bad taste they challenged the target's "character and qualifications as a religious leader." *Id.* at 583. Of particular importance, the court concluded that the "Indictment amounts to a content-based restriction because it limits speech on the basis of whether that speech is emotionally distressing to A.Z." *Id* at 584. Citing *Stevens*, 559 U.S. 460, where the Supreme Court struck down a prohibition of "animal cruelty" videos, the *Cassidy* court ruled that the indictment was not "necessary to serve a compelling state interest," and could not survive strict scrutiny. *Id.*

There is one unifying theme to the circuit court decisions that have rejected First Amendment challenges to cyberstalking prosecutions: in each, it would be difficult to conceive of a legitimate purpose behind the speech in question. *Petrovic, Sayer,* and *Osinger* involved dissemination of private information about each victim's sexual experiences, information that served no public purpose and the type of deeply personal information that would ordinarily not be disseminated without the consent of the subject. In *Sayer*, the defendant went so far as to

---

[5] I have not discussed *Bowker* in detail because it predates the 2006 amendments to the cyberstalking statute that added language about substantial emotional distress and harassing conduct.

impersonate his victim. In *Bowker*, the victim herself received anonymous communications about the defendant's sexual and violent fantasies involving her, which were not only frightening in themselves, but in some instances reflected a physically threatening tone. These cases stand in stark contrast to *Cassidy*, where the speech in question had a legitimate public purpose, criticism of the leader of a religious sect, even though it also had the corollary effect of causing distress to the individual being criticized. The issue in this case is a closer one, because at least some of the speech in question would likely be protected, depending upon the Defendant's intentions and the context of the speech.

Turning to the indictment here, I have no trouble finding that much of the speech alleged in this case could be defamation, and therefore is not protected by the First Amendment. The Indictment alleges Defendant "posted numerous false and defamatory electronic messages against Christine Belford" on YouTube accusing Ms. Belford of sexually abusing her children. Indictment ¶ 39. Truth is a defense to defamation, so Defendant can attempt to prove that the allegedly defamatory speech here was in fact not defamatory and therefore protected expression. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 245–46 (1974).

I also recognize that some of the speech at issue here could be integral to the commission of a crime. When Defendant allegedly asked friends to drive by Belford's house, she was not engaging in protected expression. If that request was a part of a conspiracy to harass, that speech would constitute requests to others to participate in committing an offense, outside of First Amendment protection. *See Williams*, 553 U.S. at 297.

Defendant's alleged speech posting accusations against Belford to public websites does not seem to fit as well within *Giboney*'s exception. Unlike *Petrovic*, the speech was not in furtherance of extortion; unlike *Sayer* and *Osinger*, the speech cannot necessarily be described as

a gratuitous invasion of privacy. In the case before me, the Defendant is alleged to have caused substantial emotional distress by engaging in speech that would, in part, otherwise be protected if true. Like the counseling at issue in *King v. Governor of the State of New Jersey*, the only reason the speech might be integral to committing an offense is because the speech—making public accusations about Belford—*is* the offense.

The concurring opinion in *Osinger* argued that the defendant's speech fit within *Giboney* because "the conduct and speech together 'constituted a single and integrated course of conduct, which was in violation of [a] valid law.' " 753 F.3d at 953 (Watford, J. concurring). The opinion noted further that harassing the victim to cause substantial emotional distress was the "sole immediate object" of the defendant's speech. *Id.* Here, Gonzalez claims to have had motives other than harassing Belford and her children. An aunt unquestionably has a legitimate interest in protecting her nieces from abuse. To the extent that various decisions have attempted to assign a value to different categories of speech, e.g. "political", "commercial," then *protective* speech would necessarily rank toward the higher end of any range. [6] Unlike in *Osinger* and other cases discussed above, all of Defendant's speech cannot be simply swept up within *Giboney*'s exception, which requires "a single and integrated course of conduct," the "sole purpose" of which was to intentionally cause the harm proscribed in 18 U.S.C. § 2261A. *See also Vanterpool*, 767 F.3d at 167 (explaining that a statute criminalizing harassment may be unconstitutional if it "regulates not only conduct 'solely intending to harass' but any conduct 'intending to harass,' broadly sweeping to regulate a wide variety of expressive speech"). A

---

[6] "Because many, perhaps most, activities of human beings living together in communities take place through speech, and because speech-related risks and offsetting justifications differ depending upon context, this Court has distinguished for First Amendment purposes among different contexts in which speech takes place. See, *e.g., Snyder v. Phelps,* 562 U.S. 443 (2011). Thus, the First Amendment imposes tight constraints upon government efforts to restrict, *e.g.,* "core" political speech, while imposing looser constraints when the government seeks to restrict, *e.g.,* commercial speech, the speech of its own employees, or the regulation-related speech of a firm subject to a traditional regulatory program." *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2673-74, (2011).

13

court should proceed carefully when speech of this nature gives rise to criminal prosecution, so as not to inhibit important and protected speech.

Although state law is not controlling, it is useful to evaluate how Delaware approaches the type of speech at issue—speech aimed at the protection of children. Like every state,[7] Delaware explicitly recognizes its importance by immunizing individuals who make good faith reports of child abuse from civil or criminal liability if the accusation turns out to be wrong. Del. Code Ann. Tit 16, §908(a). Thus on its face, Ms. Gonzalez's speech could certainly have been directed to a incontestably proper purpose. But such immunity in Delaware is limited to the exercise of speech intended to bring the abuse to the attention of the proper authorities. Specifically, immunity is limited to good faith reports to the police or the Division of Family Services of the Department of Services for Children, Youth, and their Families. Del. Code Ann. Tit. 16, § 902. At least as alleged in the Indictment, Defendant Gonzalez did not make her reports of abuse to Delaware officials or take advantage of established channels for reporting abuse. Instead, she took her allegations to public websites and Belford's church and her daughters' school. First Amendment concerns are significantly reduced where an alternative forum existed for the Defendant to communicate her concerns, but she did not use it. This choice lends greater credence to the Government's charge that her true objective was not the children's welfare, but rather harassing and causing substantial distress to Belford.[8]

---

[7] A review by the Child Welfare Information Gateway, part of the U.S. Department of Health and Human Services, found that as of 2011, "[a]ll States, the District of Columbia, Puerto Rico, American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands provide some form of immunity from liability for persons who is good faith suspected instances of child abuse or neglect under the reporting laws." Child Welfare Information Gateway, *Immunity forReporters of Child Abuse and Neglect, available at* https://www.childwelfare.gov/pubPDFs/immnity.pdf.

[8] Defendant may well argue that she did not trust Delaware authorities to protect her nieces. This might be a relevant jury argument as to her intent, but for purposes of First Amendment analysis, the pertinent question is whether Ms. Gonzalez had alternative methods of raising concerns about the children, and she did.

14

Concern over the threat of criminal prosecution inhibiting speech is further ameliorated by two of the statutory elements of the offense: the *mens rea* requirement—"intent to kill, injure, harass, or intimidate another person," 10 U.S.C. § 2261A(2)—coupled with the further requirement that the defendant "engage[d] in a course of conduct" that reasonably gave rise to intimidation on the part of the victim. Although some First Amendment scholars have argued that such statutory requirements are not always sufficient to safeguard free speech, *see* Eugene Volokh, *Crime-Facilitating Speech,* 57 STANFORD L. REV. 1095 (2005), I am satisfied that the Indictment here does not violate the First Amendment. Defendant Gonzalez will have the opportunity to challenge the Government's proof at trial and rebut its accusation that she acted with unlawful intent.

V. **Is the Cyberstalking Statute Void for Vagueness under the Fifth Amendment?**

Defendant's remaining contention is that the Indictment violates her Fifth Amendment Due Process rights because "the language of §2261A(1), §2261A2(A) and (B), is unconstitutionally vague." Memorandum in Support of Gonzalez's Motion to Dismiss the Indictment 16. Counsel argues that "the prosecution of Amy Gonzalez for 'stalking' must fail as it does not provide sufficient notice of what constitutes criminal conduct and risks arbitrary enforcement," in part because Defendant's liability is based on the unpredictable emotional reactions of others. *Id.*

Courts recognize a longstanding principle of constitutional due process that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). The Third Circuit has summarized the test for examining a vagueness challenge to a statute:

> A statute is void on vagueness grounds if it: (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it

15

prohibits"; or (2) "authorizes or even encourages arbitrary and discriminatory enforcement."

*United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008), *aff'd,* 559 U.S. 460 (2010) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

Courts must evaluate statutes with criminal penalties by stricter standards than they evaluate statutes with only civil penalties. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Statutes that infringe on protected rights, including the right to free expression, must satisfy more rigorous scrutiny as well. *Id.* But due process does not require that statutes achieve an unrealistic level of specificity. "[T]o be constitutional, criminal statutes need only give 'fair warning' that certain conduct is prohibited." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). In other words, "[s]imply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague." *Id.* (citing *United States v. Powell*, 423 U.S. 87, 94 (1975)).

I am not convinced that the statues at issue here are unconstitutionally vague. First, 18 U.S.C. § 2261A requires the Government to prove a specific criminal intent: "the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person." 18 U.S.C. §2261A(2).[9] This *mens rea* requirement reduces the risk that a person might commit the actions the statute proscribes without having notice of their unlawfulness. *Village of Hoffman Estates*, 455 U.S. at 499 ("a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"). Rejecting a similar challenge, the Fourth Circuit wrote:

---

[9] The required intent under 18 U.S.C. § 2261A(1) is slightly different: "the intent to kill, injure, harass, or intimidate another person."

> It is an element of the crime [18 U.S.C. § 2261A] that he have intended harm to a particular victim. And it is similarly an element that the intended target have suffered substantial emotional distress as a result. Given that the government must prove both intent and effect, we need not worry that the statute sets an unclear trap for the unwary.

*United States v. Shrader*, 675 F.3d 300, 311 (4th Cir. 2012).

Second, the Government acknowledges that Section 2261A "imposes *an objective standard* relating to the fear or emotional distress that a victim suffers as a result of a defendant's travel or course of conduct undertaken with criminal intent." Government's Memorandum in Opposition to Defendant Gonzalez's Motion to Dismiss 32. The jury must find that a **reasonable** person facing the same circumstances would react as the victim did. This objective standard alleviates concerns that the statute could be enforced based on a specific victim's disproportionate reaction to a perpetrator's conduct.

Finally, I am convinced that a reasonable person would have notice that the conduct alleged in this case would violate the statute. The Indictment alleges Defendant solicited two other individuals to drive by and observe Ms. Belford's house (Indictment ¶ 52), assisted in posting "surreptitiously recorded surveillance video of Christine Belford and her children" online (Indictment ¶ 36), participated in sending letters accusing Ms. Belford of abusing her children to the children's school (Indictment ¶ 45), and took a variety of other deliberate actions. A reasonable person would recognize that taking the actions alleged in the Indictment while possessing the intent to harass or injure required by 18 U.S.C. § 2261A and causing the type of harm described in the statute would expose the person to criminal liability.

## VI. Application of this Decision to Co-Defendants

Co-Defendants Lenore Matusiewicz and David Thomas Matusiewicz joined in Amy Gonzalez's Motion to Dismiss the Indictment. My reasoning in this memorandum applies with

equal force to the indictments against the Co-Defendants, and therefore the Motion to Dismiss the Indictment will be denied as to the Co-Defendants as well.

An appropriate order follows.

/s/ Gerald Austin McHugh
Gerald Austin McHugh, J.